PROVOLT v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, *Appellant.*

1. **Eminent Domain**: SURRENDER OF LAND BY OWNER WITHOUT PRE-PAYMENT OF DAMAGES. The court affirms the rule laid down in this case when it was here before (57 Mo. 256), as to acquiescence of the land owner in the construction of a railroad over his land pending proceedings for condemnation.

2. ———: EXECUTION TO ENFORCE PAYMENT OF DAMAGES. Section 31, page 327, Wagner's Statutes, requiring motion and notice before an execution can be issued against a railroad company to compel payment of damages assessed for the taking of land for right of way, does not apply to the Chicago & Southwestern Railroad Company. Under the charter of that company a general judgment may be rendered against the company, for the enforcement of which execution may issue, of course, as in other cases. (Acts 1860, p. 441, ₰ 4; Acts 1853, p. 357, ₰₰ 8, 9.)

3. ———: JUDGMENT ON A SECOND ASSESSMENT OF DAMAGES. Where a second assessment of damages is made in a proceeding to condemn land for railway purposes, the court must render judgment for the full amount found by the commissioners. If money has been paid into court upon a former assessment, which has since been set aside at the instance of the land owner, it cannot be treated as a payment or allowed as a credit on the judgment.

4. ———: EQUITABLE LIEN FOR PRICE OF LAND TAKEN AND NOT PAID FOR. The owner of land condemned for railway purposes and not paid for, retains a lien for the price, even after the road has gone into operation, and a court of equity will enforce the lien against the company taking the land and all others occupying it as lessees or otherwise.

5. ———: INJUNCTION TO COMPEL PAYMENT OF DAMAGES. When a rail-

road company, for whose use land has been condemned and taken, has become insolvent, and the owner has appealed in vain to all the statutory remedies for collection of his damages, a court of equity will afford relief by ordering payment, and, in default of payment, will restrain the original company or any company holding under it from operating the road on his land. The time within which payment should be made in order to avoid the consequences of default, should be prescribed in the final decree. It is not sufficient that it be prescribed in an interlocutory decree.

*Appeal from Clinton Circuit Court.*—HON. GEORGE W. DUNN, Judge.

*Shanklin, Low & McDougal* for appellant.

1.   The petition does not state facts sufficient to entitle the plaintiff to equitable relief. If the facts stated in the petition are true, the entry of the railroad company upon plaintiff's land was a naked trespass, and ejectment would be the proper remedy. *Walther v. Warner*, 25 Mo. 277; *Evans v. M., I. & N. R. R. Co.*, 64 Mo. 453; *Walker v. C., R. I. & P. R. R. Co.*, 57 Mo. 275. Again, there is no allegation that the corporation was not solvent on the 8th day of March, 1873, the day when this suit was instituted; nor does the petition show that executions issued on said judgment had been returned *nulla bona*, before that date. As a matter of fact none had then been so returned. The petition, therefore, does not bring the case within the decision in *Evans v. M., I. & N. R. R. Co.*

2.   The court erred in admitting in evidence the execution issued on the 12th day of February, 1873, and returned on the 29th day of April, 1873, after the suit was brought. *Evans v. M., I. & N. R. R. Co.*, 64 Mo. 463; *Nicholas v. Salem*, 14 Gray 490; High Inj., § 394; *New Albany v. Connelly*, 7 Ind. 32; *Parham v. Justices, &c.*, 9 Ga. 341; *Keene v. Bristol*, 26 Pa. St. 46. This execution was not issued by order of the court. The right to issue it at all was purely statutory, and the mode prescribed by the statute must be followed. Not having been ordered by the

court, this execution was a nullity so far as the defendant was concerned. Wag. Stat., § 3, 327.

3. Even though the execution was properly issued, the plaintiff should have waited until the return day before appealing to equity for concurrent aid. It is true that this suit was instituted in ejectment, but the plaintiff cannot obtain relief now that he would not have been entitled to then.

4. The second execution was issued long after this suit was brought, and surely cannot affect the rights of the parties so far as this suit is concerned. It is also open to all the objections urged against the first.

5. The judgment is erroneous. It requires the defendant to pay the plaintiff $175, when a part of the amount had already been paid.

*S. H. Corn* for respondent.

1. Plaintiff has a remedy in equity, (57 Mo. 256,) and as equity jurisdiction is founded on the statement of facts and not upon the specific relief sought, it follows that when the jurisdiction attaches the court will grant such relief as the plaintiff shows himself entitled to; irrespective of the prayer of the petition. *Keeting v. Spradling*, 13 Mo. 321; *Corby v. Bean*, 44 Mo. 379. (a) It has power in a proper case to pass the title to real estate and to decree that possession be delivered up, and it may enforce such decree by proper process. Wag. Stat., §§ 27, 28, 1056; *Henderson v. Dickey*, 50 Mo. 165; *Ames v. Gilmore*, 59 Mo. 537; *Bibb v. Means*, 61 Mo. 284. (b) It will enforce the payment of land-damages against a railway company that enters into possession without having paid the same, by an order for such payment within a time named, and, in default of payment, restrain the company from the use of the land until the damages are paid. Redfield on Railways, 238, § 3; Id. 239, § 6; *Walther v. Warner*, 25 Mo. 277; *Evans v. Mo., Iowa & Neb. Ry. Co.*, 64 Mo. 453; *Shute v. Chicago & Mil. R.*

*R. Co.*, 26 Ill. 436.   (c) And if it will restrain the use, why not restore the property ?   The facts that justify the one will sustain the other.   Plaintiff was denied his remedy by ejectment on the ground that he had waived his right to pre-payment of damages.   57 Mo. 256.   Having so waived his right to pre-payment, he asked the court to limit defendant's right to occupy without making subsequent payment.   He had exhausted his remedy at law.   The Chicago & Southwestern Company had transferred its possession to the Chicago & Rock Island Company before judgment for damages was rendered; when rendered, it was worthless; defendant was insolvent; executions were unavailing; ejectment against the defendant in possession was equally so ; the taking of plaintiff's property for public use without compensation, was accomplished.   An injunction to restrain the further use might well issue upon these facts, but when being compelled by this court to admit waiver of the right to pre-payment, the court below put a reasonable limit upon the right to make subsequent payment, and defendant 'persisted in their refusal to make compensation beyond the time fixed by the court, a restoration of the property was the only adequate remedy. And this is clearly within the power of the court.   When the law fails equity will furnish remedy.   Compensation or restoration is the central idea of the remedy furnished by the general statute to which defendants appeal.   1 Wag. Stat., §3, p. 328.

2.   Plaintiff was not bound to give the Chicago & Southwestern Company notice of his intention to apply to court by motion for the enforcement of the payment of his damages by execution.   The proceedings for condemnation were had under its charter.   See §§ 8, 9, Acts of 1853, p. 357; Acts 1860, § 4, p. 441.   This statute authorizes a general judgment for the damages assessed against the company.   The power to enforce the same by execution is not restricted, and plaintiff was entitled to a general execution on this judgment.   Wag. Stat., § 1, p. 601.

Provolt v. The Chicago, Rock Island & Pacific Railroad Company.

NORTON, J.—On the 23rd day of February, 1871, the Chicago & Southwestern Railway Company instituted proceedings to condemn the right of way over a lot in Cameron, belonging to plaintiff, Provolt. Commissioners were duly appointed to assess the damages which plaintiff would sustain by reason of such appropriation of his land, and on the 4th day of March, 1871, the commissioners made a report allowing damages in the sum of $75. On the 8th day of the same month plaintiff filed exceptions to this report. The railroad company entered upon the land on the 15th day of March, and commenced the construction of its railroad thereon. On the 15th day of April, 1871, the company deposited with the clerk of the proper court, for plaintiff's use, the sum of $75, so awarded by said commissioners. The plaintiff lived near the premises, and when the work was commenced, notified the workmen that the land-damages had not been paid, and forbade them going on with the work until he was paid. The work was continued, however, and he made no further objection. Afterwards such proceedings were had that the report of the commissioners was set aside, and other commissioners appointed, who, on the 22nd day of February, 1872, made a report assessing plaintiff's damages at $175. This report was confirmed on the 15th day of August, 1872. In October, 1871, the possession of the road was delivered to the Chicago, Rock Island & Pacific Railroad Company, and it has continued to operate it ever since.

On the 12th day of February, 1873, plaintiff caused an execution to be issued on the judgment awarding him land-damages, which execution was, on the 29th day of April following, returned not satisfied. Execution was again issued on said judgment on the 18th day of March, 1875, which was also returned *nulla bona*. Neither of these executions was issued by order of court, nor was any notice given of plaintiff's application to have them issued. One of them was issued a few days before this suit

was commenced, but was not returnable, and was not returned until more than a month after the suit was brought. The other execution was not issued until after the judgment in this case had been reversed by the Supreme Court. This suit was commenced on the 8th day of March, 1873, by filing a petition in ejectment against the Rock Island Company. On trial the plaintiff had judgment, which was reversed by this court on appeal. *Provolt v. C., R. I. & P. R. R. Co.*, 57 Mo. 256. On the 15th day of December, 1875, plaintiff filed an amended petition, making the Chicago & Southwestern Railway Company a party defendant, and changing the form of the action from ejectment to an equitable action to enforce the payment of his judgment. On trial the plaintiff offered the executions above referred to, in evidence. The defendants objected that they were incompetent, irrelevant and immaterial, and that they were not issued by order of the court, or on motion, after notice to the railroad company. The court overruled the objections, and the defendants duly excepted. The court found for the plaintiff, and entered a decree requiring defendants to pay to the clerk of the court, for use of plaintiff, the sum of $175 on or before the first day of the next term of the court, and in default thereof, requiring defendants to deliver possession of the premises to plaintiff and divesting them of all their right or claim thereto. At the next term of the court, the interlocutory decree was made final, and judgment rendered for plaintiff for possession of the land in question, from which judgment defendants have appealed to this court.

It is insisted by defendants that the petition does not state facts sufficient to entitle plaintiff to equitable relief, 1. EMINENT DOMAIN: surrender of land by owner without pre-payment of damages. and if the facts therein stated are true, ejectment is the remedy. We pass this objection with the remark that when this case was once before in this court, as reported in 57 Mo. 256, a judgment in ejectment in plaintiff's favor was reversed at defendant's instance on the ground that ejectment was not

the remedy, but that redress must be sought on the equity side of the court, and the judgment was reversed and the cause remanded to enable plaintiff to so frame his petition that he might obtain relief through that channel. Now, that this has been done, to say the least of it, the claim made by defendant, that plaintiff's remedy is at law and not in equity, manifests a degree of inconsistency which does not commend itself to our favorable consideration.

It is further objected that the court erred in receiving in evidence the two executions issued against the Chicago & Southwestern Railway Company. The sole ground of this objection, as made in the court below, was that they were not issued by order of the court or on motion, after notice given to the railroad company. If the proceedings had been instituted under the general law providing for the condemnation of land for railroad purposes, then section 3, Wag. Stat., p. 327, requiring motion and notice before the issuance of execution, the objection of defendants ought to have been sustained. The proceedings in this case, however, were expressly authorized by sections 8 and 9, Acts 1853, p. 357, and section 4, Acts 1860, p. 441, being part of defendant's charter. Provision is made by these sections for authorizing the circuit court to render judgment for the damages assessed without notice or motion as required in section 3, *supra*.

2.——: execution to enforce payment of damages.

It is also objected that the court erred in not regarding the $75 deposited by defendant with the clerk of the circuit court on the report of the first set of commissioners, as a payment made by defendant, which plaintiff was bound to accept. Plaintiff was under no obligation to accept the amount thus deposited, but availed himself of a right given him by law to refuse to accept it, and file his exceptions to the assessment and report. He could not accept the money thus deposited, thus recognizing the correctness of the report, and at the same time file exceptions and ask the court to

3.——: judgment on second assessment of damages.

nullify the report awarding it to him. He chose to do the latter. His exceptions were sustained and the report set aside, after which he could assert no right to the $75 deposited by defendant in virtue of it. As to plaintiff at least, the report of the first commissioners, when set aside, became a nullity, and his measure of compensation for the land taken by defendants was dependent upon the action of the second set of commissioners. In their report they awarded him damages in the sum of $175, which he was entitled to receive, and the company was bound to pay if it persisted in appropriating to its use plaintiff's land. While defendants have had the occupancy and use of plaintiff's land since 1871, it is clear from the evidence that they have not paid the price which they were required by law and the judgment of the court on the report of the commissioners filed February 22nd, 1872, to pay as a compensation therefor.

We think it also clear that the insolvency of the Chicago & Southwestern Railroad Company was sufficiently 4. ——: equita- established by the evidence, and that plaintiff .ble lien for price had exhausted all the statutory remedies of land taken and not paid for. provided for the enforcement of his demand against said defendant, without avail. Without having done this the plaintiff might well have asked the injunction on the principle enunciated in section 1,231, 2 Story Eq., where it is said " that it has recently been decided in England that the owner of land taken by a railway for the purpose of its construction, still retains a lien upon the land for the price, even after the railway has gone into operation, and that a court of equity will enforce such lien against the company taking the land and all others in the exercise of their functions as lessees or otherwise. The learned judge, Lord Romilly, said: ' It is true that the rights of the public should be considered in these cases, but the company cannot take property without paying for it, and then say it is for the interest of the public that the property should be used by them, and so deprive the vendor

of his lien. The public can have no rights springing from injustice to others.' "

The plaintiff having fruitlessly appealed to the statutory methods of relief has brought his case within the principle of the case of *Evans v. Mo., Iowa & Nebraska R. R. Co.*, 64 Mo. 453, where, after an exhaustive examination of the subject, it was held that when a land-owner, whose land had been condemned for the use of a railway, had exhausted his statutory remedies, the company condemning the land being insolvent, he was entitled in a proper proceeding to payment of the amount awarded him as damages or compensation, or in default thereof to an order restraining the company from operating the road on his land. For the reason that no time was prescribed in the final decree within which defendants might pay the price of the land before the consequences of default should fall upon them, they have not had the full benefit of the rule laid down in the case of *Evans, supra*. It is true that in the interlocutory decree rendered by the circuit court, defendants were required to pay the damages assessed to plaintiff on or before the first day of the next term of the court, but from this decree, it not being final, defendants could not appeal, and the effect of complying with it would have deprived them of appealing from the judgment of the court requiring them to do the very thing they were contesting, and upon which they had a right to the opinion of this court.

We think, for this reason, the decree rendered should be modified so as to make it conform to the principle announced in the *Evans* case, and without remanding the cause will order such decree as ought to have been rendered in the court below. We, therefore, order and direct that a decree be entered to the effect that defendants pay to the clerk of this court, for the use of plaintiff, the sum of $175, with six per cent. interest thereon from the 22nd day of February. 1872, amounting, principal sum and interest, to the sum of $251, and all costs, on or before the 1st day of

5. ——: injunction to compel payment of damages.

August, 1879, and in case default is made in said payment, defendants shall be enjoined and restrained from operating their road over the land of plaintiff described in his petition, and the clerk shall, in case of such default, issue a writ restoring the possession of said land to plaintiff; that upon payment of said sum and costs, plaintiff shall enter satisfaction of said judgment, and the right and title of plaintiff to said land shall vest in defendants. All concur.

JUDGMENT, AS MODIFIED, FOR RESPONDENT.